In the Matter of the Application of JAMES J. FRAWLEY, Public Administrator of the Goods, etc., of MICHAEL SANITA, Deceased, Respondent.

MARIE LAGUARDIA, Appellant.

First Department, December 3, 1926.

**Gifts — gift causa mortis — decedent lived with appellant as member of family for years though not relative — decedent was not friendly with own relatives — decedent who was ill with tuberculosis gave appellant two bank books and told her that they were hers if he did not return — decedent also appointed appellant attorney to close out his business — decedent died shortly thereafter — evidence shows gift causa mortis.**

A gift *causa mortis* to the appellant by the decedent was established in this proceeding, since it appears that the decedent had lived with the appellant and her husband for many years as a member of the family; that he was not on friendly terms with his own relatives; that he was sick with tuberculosis and just before leaving for the hospital gave appellant a note directing her to care for his personal property and gave her two bank books stating at the time that they were hers if he did not return; that proof of this declaration was made by two witnesses and by the appellant herself; and that within a few days thereafter when he was about to be transferred to the Veterans' Hospital at Tupper Lake, N. Y., he gave appellant a power of attorney to collect money due him and to sell his place of business.

APPEAL by Marie LaGuardia from an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 27th day of April, 1926, in a discovery proceeding directing the appellant to turn over certain property to the public administrator.

*John F. Collins* of counsel [*John A. Leddy*, attorney], for the appellant.

for the respondent.

McAVOY, J. The surrogate in a discovery proceeding brought by the public administrator of New York county against one Marie LaGuardia directed her to turn over to the public administrator two bank books, title to which she claims because of a gift *causa mortis*, which is said to have been made by the decedent on June 2, 1925. The facts which indicate the right of the appellant to retain these bank books and which establish a gift *causa mortis* are:

When the decedent was a boy about fifteen years of age, having come from Italy, he went to live with the family of one Marie LaGuardia. He worked for her husband in the shoe repairing business and was taken into his shop to learn the trade. Thereafter he continued in the employment of the husband of the appel-

lant until he established his own business. During most of the time from his arrival here to his leaving, to go to Seton Hospital, June 2, 1925, about seventeen years, he lived in the home of the appellant as one of the family. He had two brothers living in the house immediately adjoining the LaGuardia home, but apparently they were unfriendly as they seldom met or even conversed. His other relatives, parents, if they be living, are in Italy and two other brothers are also in that country. Decedent had been sick for two years prior to the day he left for the hospital and had been treated for tuberculosis by one Doctor Russo for about a month prior to his death. He left a note in Italian just before leaving for the hospital, which reads in a fairly literal translation:

" NEW YORK, *June* 1, 1925.

" With this note is authorized the Mrs. Maria Donato LaGuardia of to take care personally of all the my effects or also property personal.
                        " My sign
                            " MICHELE SANITA."

On the following day before leaving to go to the hospital decedent gave the respondent this note and the two bank books. He said to her, as she testified: " I know that everything is in good hands, and it is yours if I never return; if I do return, naturally it is mine, and if I do not return it is yours. I have nothing to do with my brothers, and I have no one else but you, and then he called me mother and kissed me."

Mrs. Gallo, an entirely disinterested witness, being no relation to the decedent or to the appellant, but who knew the decedent for ten years, having lived in the same house for that period of time, was in the apartment of the appellant on June 2, 1925, the day the decedent left home to go to the hospital. Her testimony regarding the gift of the bank books completely substantiates that of the appellant. She testified, on direct examination as follows: " Q. What did Michael Sanita say? A. He had two bank books and a paper and he said, ' Here mama here, and if I come back it is mine, and if I do not come back it is for your whole life.' Q. Did he have the bank books in his hand then? A. Two bank books and one paper. Q. And you saw him give those bank books to Mrs. LaGuardia? A. Yes."

After decedent went to Seton Hospital he remained there but two days and when he was about to be transferred to the Veterans' Hospital at Tupper Lake, N. Y., he executed on June 4, 1925, a few days before he left, a power of attorney in which he appointed the appellant to be his attorney in his name, place and stead, " to collect any money due me, also to pay my bills which I owe and

granting unto her full power to sell my place of business which is located at No. 6 Post Avenue, New York." He also authorized Mrs. LaGuardia to take full charge of his possessions and belongings until he was well and authorized her to withdraw any money in his name.

On June 8, 1925, he left Seton Hospital and went to the Veterans' Hospital at Tupper Lake, N. Y., where he died about a month later, on July 17, 1925.

The learned surrogate held that the foregoing proof of facts was not sufficient from which to deduce a gift *causa mortis* of the two bank books. He was led to this conclusion because of, the two papers, the one of authorization to take care of Sanita's belongings and the other a power to draw his money while sick, but the appellant here does not base her claim to the gift on these papers but from the statement that " if I do return, naturally it is mine, and if I do not return it is yours." Proof of this declaration or its equivalent tenor is made by two witnesses and by the appellant herself.

There is internal evidence from the power of attorney itself that there was apprehension of death on the part of the donor because he directed the donee in his power of attorney to collect any money due him, pay all bills which he owed and sell his place of business. The decedent was in the last stages of consumption and was leaving home to go to the hospital from which he was not likely to return. In addition to this, there was no evidence of any character tending to indicate that there was any other disposition intended to be made of these two bank books by the decedent, and because of his relation to this appellant, who had practically acted as a mother to him throughout his life in New York and considering his antipathy to his brothers, there seems no reason for assuming that any other disposition of the property was intended than the gift to the appellant in case of his death.

We think there was adequate proof of title to the books in Marie LaGuardia and that the order of the surrogate should be reversed, with ten dollars costs and disbursements, and the petition of the public administrator should be dismissed and the matter, therefore, remitted to the Surrogate's Court to proceed in accordance with this opinion.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and the petition of the public administrator dismissed, and matter remitted to the Surrogate's Court for further action in accordance with opinion.